## EDWARD BELL v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

December 9, 1910.

Nos. 16,740—(108).

**Evidence of negligence.**

Evidence considered, and *held* not so far conclusive of defendant's freedom from the negligence charged as to justify a judgment in its favor notwithstanding the verdict of the jury.

**Judgment notwithstanding verdict — inconsistent verdicts.**

Inconsistency in verdicts of a jury, general or special, furnishes no basis for judgment notwithstanding the verdict, as authorized by section 4362, R. L. 1905.

**Same.**

Such errors should be corrected by way of motion for a new trial.

[1]Reported in 128 N. W. 829.

Action in the district court for Sherburne county against Great Northern Railway Company, Northern Pacific Railway Company and John Umberhocker, to recover $25,000 for personal injuries. The case was dismissed as to the Great Northern Railway Company. The facts are stated in the opinion. The separate answer of the Northern Pacific Railway Company and John Umberhocker alleged plaintiff's contributory negligence. The reply was a general denial. The case was tried before Giddings, J., who, at the close of plaintiff's testimony, denied defendants' motion for a directed verdict in their favor. The jury returned a verdict in favor of John Umberhocker and a verdict in favor of plaintiff for $2,000. The court denied the motion of defendant Northern Pacific Railway Company for judgment in its favor notwithstanding the verdict. From the judgment entered pursuant to the verdict in favor of plaintiff, the Northern Pacific Railway Company appealed. Affirmed.

*Charles W. Bunn* and *Charles Donnelly,* for appellent.

*Benton, Molyneaux & Morley,* for respondent.

BROWN, J.

It appears from the evidence that the Northern Pacific Railway Company and the Great Northern Railway Company own and operate their trains between Minneapolis and St. Cloud over parallel tracks, so laid as to constitute a double-track system between those places. By a traffic arrangement the Northern Pacific Company maintains both tracks in repair and proper condition for use. The trains of both companies move over these tracks in the same direction, west-bound trains over one, and east-bound trains over the other. In consequence of the continuous passage of trains in one direction, the rails of the track have a tendency to creep forward and press tightly together, and to such an extent that they bend, or, to use the words of the witnesses, "kink," in places, thus rendering the track dangerous and unsafe. It becomes necessary from time to time to remedy this condition, and this is done by the removal of the "kinked" or crooked rail, cutting off the end, and replacing it in position. The rail will right itself to its natural straight condition as soon as relieved from the pressure caused by contact with other rails.

The rails are removed by withdrawing the spikes on one side and disconnecting the angle bars at the rail joints, and when dislodged by means of a crowbar frequently spring out of position with some violence, sometimes a distance of two or three inches, and again as far as two or three feet, in consequence of which those engaged in the work are necessarily required to exercise care to avoid being injured.

Plaintiff was employed by defendant Northern Pacific Company as a section hand, and had been engaged in that work for a number of years, both for defendant and the Great Northern Company. On the day of the accident complained of he was ordered by the roadmaster to proceed with his section foreman to a designated place on the line and remove "some of the kinks on the main line." In compliance with this direction the crew proceeded to the appointed place and discovered a kinked rail, which they repaired. Plaintiff withdrew the spikes, and the foreman disconnected the angle bars. Plaintiff completed his part of the work, and stepped aside some fifteen feet from the track, and when the foreman had removed the angle bars, immediately and without any force being applied to the kinked rail, it suddenly sprang from its position, striking plaintiff, fifteen feet away, breaking his leg.

Plaintiff brought this action to recover for the injury so received, against both railroad companies and the section foreman under whom he was employed, charging them with negligence in two particulars: (1) In permitting the track to become and remain out of repair; and (2) in failing to warn and instruct plaintiff that a kinked rail, when loosened from its fastenings, was likely to spring out to the extent of the one in question. The action was dismissed as to the Great Northern Company. Plaintiff abandoned the first ground of negligence, and the cause proceeded to trial against the Northern Pacific Company and its section foreman upon the second ground of alleged negligence only. A verdict was returned in favor of the section foreman, but against the railroad company. The company thereafter moved for judgment notwithstanding the verdict, without asking for a new trial. The motion was denied, judgment entered for plaintiff, and defendant appealed.

The only question presented is whether the evidence as a matter

of law fails to sustain the charge of negligence in respect to the failure to warn and instruct plaintiff of the dangers incident to his work.

Plaintiff was an experienced track laborer, and had frequently repaired defects of this character. He was aware of the fact that rails in the situation of this one would, when dislodged, spring out of position a short distance. He had frequently observed this in his work. But no occurrence of this particular kind had ever come to his observation, and he had never been instructed or warned that it was likely to occur. In fact, he testified that he never knew a rail to spring out, except when force was applied for the purpose of removing it, and then only for a short distance. The trial court submitted the case to the jury upon the theory that it is one of the absolute duties of the master to warn and instruct his servants of all dangers incident to his work which are not, in the exercise of reasonable care, discoverable by the servant, and those which are beyond his comprehension or appreciation. The instructions of the court were proper, and in harmony with the "well-established rule of law that the master is bound to inform the servant of all dangers incident to the service, of which he is cognizant, or of which in the exercise of ordinary care he would be cognizant; that is, he is bound to warn the servant of all latent or extraneous dangers of which he is himself cognizant, or of which in the exercise of ordinary care he would be cognizant, and, failing in this respect, he is liable to the servant for all the consequences resulting to him from the lack of such warning." Wood, Master & Servant, § 354.

No complaint is made by defendant of the instructions. Its contention is that plaintiff's long experience in this class of work, the knowledge possessed by him that rails in this condition, when loosened from their fastenings, frequently spring out to the extent shown in this testimony, rendered instructions or warnings in respect thereto wholly unnecessary; and, further, that the record contains no evidence showing a knowledge on the part of defendant that a situation like that here disclosed was at all likely to arise. Therefore defendant insists that it failed in no duty or obligation to plaintiff in this respect.

It does not necessarily follow, from the fact that plaintiff, who

was over thirty years of age, an experienced section hand, and possessed a limited knowledge of the action of rails in the condition of this one, understood and appreciated the risks of his employment, or the likelihood of an accident of this kind, and, therefore, was not entitled to instructions and warnings. As remarked by Judge Mitchell, in Woutilla v. Duluth Lumber Co., 37 Minn. 153, 33 N. W. 551, 5 Am. St. 832: "A man of ordinary intelligence and experience may know the actual condition of an instrument with which he is working, and yet not know the nature or extent of the risks to which he is exposed." Plaintiff in the case at bar was a common laborer, not shown to have possessed more than ordinary intelligence. There existed peculiar conditions, not readily understood, relative to the action of steel rails under the situation mentioned, which we are not justified in assuming plaintiff fully comprehended or appreciated. The evidence upon the question is not conclusive that he did so understand the dangers confronting him. Nor is plaintiff deprived of a right of action because the evidence fails to show that defendant knew that the rails were likely to spring out to the extent of this one. There is no evidence that its superior officers did not know the facts, or did not know and understand the peculiar action of the rails under such conditions.

No evidence was offered by defendant. It rested solely upon the claim that plaintiff's experience fully informed him of the dangers of his work. The master and servant do not stand upon an equal footing. The servant is held responsible for risks which are apparent and obvious, while the master is required to exercise reasonable care to discover and inform the servant of those of a latent or concealed character. It does not appear that defendant in the case at bar made any effort in this respect. It does, however, appear that its roadmaster knew of an instance where a rail had sprung out six or eight feet under similar conditions, though the "kink" was caused by heat, and not by pressure, as in the case at bar. This was sufficient, if notice to it was necessary, to require an investigation to learn the extent of the dangers to which its servants were exposed, and inform them thereof. Gray v. Commutator Co., 85 Minn. 463, 89 N. W.

322; Johnson v. MacLeod, 111 Minn. 479, 127 N. W. 497. The question was for the jury.

2. The jury returned a verdict in favor of the section foreman, who was charged with the same acts of negligence that were charged against the company. There is evidently an inconsistency in the action of the jury. But this is no ground for judgment notwithstanding the verdict. Lindem v. Northern Pacific Ry. Co., 85 Minn. 391, 89 N. W. 64; Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958. It was undoubtedly the duty of the section foreman, as the representative of defendant, to warn and instruct servants working under him, and his discharge of that duty would perhaps relieve the company. If this be so, it follows that the jury in one breath both condemned and exonerated defendant. This was, of course, fatal to the verdict, but should have been corrected by way of a motion for a new trial.

Judgment affirmed.